UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

RONALD EARL GADSDEN,

                            Plaintiff,

v.

MICHAEL McGRATH,

                            Defendant.

Case No.: 3:20-cv-02258-WQH-DEB

**ORDER**

HAYES, Judge:

The matters before the Court are Defendant Michael McGrath's Motion for Summary Judgment (ECF No. 62) and Plaintiff Ronald Earl Gadsden's Motion to Strike Portions of the Declaration of Cesar Ceballos ("Motion to Strike") (ECF No. 65).

## I.   PROCEDURAL BACKGROUND

On November 19, 2020, Plaintiff, formerly housed at the George Bailey Detention Facility ("GBDF") in San Diego, California, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. The Complaint alleged that Defendants San Diego Sheriff Deputies John Gehris and Michael McGrath violated Plaintiff's First Amendment rights by retaliating against him for requesting an Internal Affairs ("IA") complaint form after McGrath allegedly refused to allow Plaintiff to attend a video visit. (ECF No. 1.)

On October 14, 2021, Plaintiff filed a First Amended Complaint ("FAC") (ECF No. 29), and on April 19, 2022, the Court dismissed the claims brought against Defendant Gehris (*see* ECF No. 41).

On April 24, 2023, Defendant McGrath (hereinafter, "Defendant") filed the Motion for Summary Judgment. (ECF No. 62.) The Court subsequently provided Plaintiff with notice of the requirements for opposing summary judgment as required by *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland,* 154 F.3d 952 (9th Cir. 1998) (en banc). (*See* ECF No. 63.) On May 25, 2023, Plaintiff filed a Response in opposition to the Motion for Summary Judgment (ECF No. 64), as well as the Motion to Strike (ECF No. 65).

On June 8, 2023, Defendant filed a Reply in support of his Motion for Summary Judgment (ECF No. 67) and a Response in opposition to Plaintiff's Motion to Strike (ECF No. 68).

## II.    MOTION FOR SUMMARY JUDGMENT

### A. Facts

On February 15, 2019, Plaintiff was classified as a high-level inmate and incarcerated in Facility 8, near GBDF in San Diego County. Facility 8 is "physically separated" from GBDF and it takes "about two to three minutes" to walk there from GBDF. (Kellas Deposition, ECF No. 62-3 at 75.) In the event of security issues that required additional support, the four to five deputies typically assigned to Facility 8 "would have to rely on outside help from [GBDF]," which would take "several minutes" to arrive. (McGrath Deposition, ECF No. 62-3 at 51.)

Unlike GBDF, Facility 8 did not have an area designated for disciplinary lockdown or separation, which presented operational issues. Due to these operational issues, it was "common practice" to transfer inmates who had received a rules violation report from Facility 8 to GBDF as an operational matter pending a determination as to the imposition of any discipline. (Tyson Deposition, ECF No. 62-3 at 62.) Defendant presents evidence

1   that the operational decision to transfer inmates who had received a rules violation report
2   had to be determined by a sergeant. *See id.*

3          On February 15, 2019, at approximately 6:33 p.m., the night shift at Facility 8 began.
4   Defendant was the control deputy for the night shift, responsible for monitoring deputy
5   safety inside the modules and operating doors and gates for staff and inmates from a
6   second-story control tower. At approximately 6:50 p.m., the night shift started the safety
7   check and physical count of inmates.

8          A couple of minutes after 7 p.m., Plaintiff called on the intercom to the control tower.
9   Defendant answered the intercom and asked, "How can I help you?" (Gadsden Deposition,
10  ECF No. 62-3 at 25.) Plaintiff stated that he had a video visit and requested that Defendant
11  open his door but did not receive a response.

12         After about one minute, Plaintiff pressed the intercom button a second time and
13  stated: "I have a video visit. This is the third time you guys have done this. Can you pop
14  my door please." *Id.* at 26. In response, Defendant told Plaintiff, "Check your tone." *Id.*

15         Plaintiff pressed the intercom button a third time between approximately 7:08 and
16  7:10 p.m. and stated: "This is the third time this has happened. I don't know what the
17  problem is, but … are you going to give me my video visit? We're already 12 minutes or
18  whatever into my visit …. [T]he people that secure these visits shouldn't be getting
19  penalized for whatever reason. They pay for the stuff. They should get their full 30
20  minutes." *Id.* at 27. In response, Defendant told Plaintiff that his video visit was canceled.
21  Defendant states that he "felt that [Plaintiff's] demanding tone was … disrespectful," and
22  "the repeated calls interfered with [his] responsibilities." (McGrath Decl., ECF No. 62-5 at
23  2; McGrath Deposition, ECF No. 62-3 at 52.) Defendant further states that he decided to
24  write a rules violation report concerning Plaintiff's conduct during the third call.

25         After a period of time, Plaintiff pressed the intercom button a fourth time. Plaintiff
26  asked who he was speaking with, and Defendant responded, "This is Deputy McGrath."
27  (Gadsden Deposition, ECF No. 62-3 at 29.) Plaintiff testifies that he said, "Deputy
28  McGrath, I don't know what your deal is or what your problem is with me, but you're being

3

a bully right now and I need an IA form …. This is bullshit. I want an IA form" and/or "Fuck this. I need an IA form." *Id.* at 29, 31. The purpose of an IA form is to initiate an investigation into allegations of staff misconduct.

Defendant states that he subsequently wrote a rules violation report, and notified the floor deputies of Plaintiff's rule violation and that Plaintiff "needed to be transferred out of Facility 8." (McGrath Deposition, ECF No. 62-3 at 42.) The report states that Plaintiff "was being disrespectful" and "will be transferred" to GBDF, and recommends that Plaintiff not be housed at Facility 8 in the future. (Incident Report, ECF No. 62-3 at 5.) The report mentions Plaintiff's request for an IA form and states that Plaintiff was in violation of the following rules and regulations: "Disrespect to Staff"; "Boisterous Activity"; and "Interference with jail operations." *Id.*

In his deposition, Defendant described each of the violations contained in the report as "minor." (McGrath Deposition, ECF No. 64-1 at 47.) On other occasions, Defendant responded to incidents involving other inmates engaging in "boisterous and rude" conduct, failing to adhere to instructions, and destroying jail-issued clothing by issuing verbal warnings. (Incident Reports, ECF No. 64-1 at 6-15.)

The report was logged into the Jail Information Management System ("JIMS"). Defendant states that he printed a copy of the report and the requested IA form and provided them to a deputy to deliver to Plaintiff, but Plaintiff states that he was not given a copy of the report on that day. After the incident, Plaintiff was confined to his cell while other inmates were permitted to use the day room.

Plaintiff states that a few hours after the incident, Defendant called him on the intercom asking Plaintiff if he still wanted an IA form. After Plaintiff responded in the affirmative, Defendant stated: "Roll your stuff up. You're being transferred." (Gadsden Deposition, ECF No. 64-1 at 62.)

Plaintiff was "paraded" before other inmates with his belongings in a garbage bag, *id.* at 68, and transferred to Housing Unit 6 in GBDF, where he was assigned to cell A-213. Defendant did not consult with a supervisor prior to the transfer, did not "physically

transfer" Plaintiff, and was not aware of which cell Plaintiff was placed in Housing Unit 6 or the conditions of the cell. (McGrath Responses to Interrogatories, ECF No. 64-1 at 24; McGrath Decl., ECF No. 62-5 at 2.) Defendant did not have any further personal interactions with Plaintiff regarding the incident but did cancel Plaintiff's future scheduled visits.

Cell A-213 had the same dimensions as Plaintiff's previous cell in Facility 8, but smelled like urine, had feces on the wall, and contained hair and a cockroach. Plaintiff's new cellmate was mentally ill and "talk[ed] to people that [weren't] there." (Gadsden Deposition, ECF No. 64-1 at 66.)

At some point after Plaintiff was transferred, a disciplinary determination was made by Sergeant Kurtis Kellas and approved by a lieutenant to impose three days of disciplinary segregation. Defendant did not speak to Kellas or the lieutenant about the incident. The Sheriff's Department's policy reflects that loss of visits and disciplinary isolation are considered "Major Discipline." (Lesson Plan-Inmate Discipline, ECF No. 64-1 at 4.)

### B. Legal Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). Where the party moving for summary judgment does not bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there

is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542-43 (9th Cir. 1989) ("[O]n an issue where the plaintiff has the burden of proof, the defendant may move for summary judgment by pointing to the absence of facts to support the plaintiff's claim. The defendant is not required to produce evidence showing the absence of a genuine issue of material fact with respect to an issue where the plaintiff has the burden of proof. Nor does Rule 56(c) require that the moving party support its motion with affidavits or other similar materials negating the nonmoving party's claim.").

If the moving party meets the initial burden, the burden shifts to the opposing party to show that summary judgment is not appropriate. *Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 322, 324. The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotations omitted). The nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586; *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient."). The nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 256.

### C. Discussion

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities as well as a right of meaningful access to the courts." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *see also Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017) ("The most fundamental of the constitutional protections that prisoners retain are the First Amendment rights to file prison grievances."); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) ("[P]risoners have a First Amendment right to file prison grievances."); *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). In *Rhodes*, the Ninth Circuit set forth the five basic elements of a "viable claim of First

Amendment retaliation" in the prison context:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

408 F.3d at 567–68; *see also Barnett v. Centoni*, 31 F.3d 813, 815–16 (9th Cir. 1994) (per curiam).

### 1. Causation

Defendant first contends that Plaintiff cannot demonstrate that Defendant took adverse action against Plaintiff "because of" his request for an IA form because "[t]he undisputed evidence is that [Defendant] made the decision to write the [rules violation report] *prior* to Plaintiff's request for an IA form" and that Plaintiff used vulgar language and called the intercom multiple times. (ECF No. 62-1 at 7.) Plaintiff contends that an inference of retaliatory motive is supported by the contents of the incident report, which noted Plaintiff's request for an IA form and did not describe "any form of misconduct that would warrant the discipline that was imposed" under Sheriff's Department policies, as well as Defendant's issuance of warnings for other inmates engaging in similar conduct, and Defendant's statement to Plaintiff that he was being transferred immediately after asking Plaintiff if he still wanted an IA form. (ECF No. 64 at 14.) Plaintiff further contends that Defendant took additional adverse action apart from writing the rules violation report.

To establish the second element of a First Amendment retaliation claim, Plaintiff must show that his request for an IA form was a "substantial" or "motivating" factor behind Defendant's decisions to record a rules violation, transfer Plaintiff to Housing Unit 6, or engage in other adverse actions against Plaintiff. *Brodheim*, 584 F.3d at 1271 (quotation omitted). This requires "evidence of retaliatory motive, that, taken in the light most favorable to [Plaintiff], presents a genuine issue of material fact as to [Defendant's] intent." *Id.* at 1271 (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)).

In support of his position that he did not retaliate against Plaintiff for requesting an IA form, Defendant submits his own testimony that he decided to write the rules violation

report prior to Plaintiff's request for an IA form. Defendant also submits evidence that the report was written prior to the conversation in which Defendant informed Plaintiff he would be transferred, that transferring an inmate with a rules violation from Facility 8 was a common practice, and that Plaintiff called him on the intercom multiple times and used vulgar language.

Plaintiff lacks direct evidence of Defendant's retaliatory motive. However, he submits circumstantial evidence in support of the inference that his request for an IA form triggered the issuance of the rule violation report and/or other subsequent adverse actions. *See McCollum v. Cal. Dep't of Corr. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (stating that circumstantial evidence can create a triable issue as to motive). In particular, Plaintiff submits evidence that Defendant: (1) chose to record Plaintiff's rule violations despite characterizing the types of violations at issue as "minor" and issuing warnings to other inmates for similar conduct (McGrath Deposition, ECF No. 64-1 at 47); (2) did not write the incident report until after Plaintiff requested an IA form and specifically mentioned Plaintiff's vulgar language in requesting an IA form as a basis for the report; (3) first told Plaintiff that he was being transferred immediately after Plaintiff reaffirmed his request for an IA form; and (4) did not consult with a supervisor prior to Plaintiff's transfer despite stating that "[t]he decision to transfer was not a discretionary decision … and was required to be made by a sergeant" (McGrath Decl., ECF No. 62-5 at 2). Considering the totality of the evidence presented by the parties in the light most favorable to Plaintiff, the Court concludes that there exists a genuine dispute of fact as to whether Defendant took adverse action against Plaintiff because of his request for an IA form.

### 2. Legitimate Correctional Goal

Defendant next contends that his actions reasonably advanced a legitimate correctional goal because it is undisputed that Plaintiff "disrupted the orderly operation of Facility 8" and Plaintiff "cannot show that [Defendant's] actions while acting in the important control-deputy position were arbitrary to the maintenance of order." (ECF No. 62-1 at 9.) Plaintiff contends that even "[a]ssuming for the sake of argument that running

8

an 'orderly' jail is a legitimate correctional goal," Defendants' actions—including confining Plaintiff to his cell, parading him before other inmates, cancelling his future scheduled visits, and recommending that he not be housed in Facility 8—did not reasonably advance this goal because they were "inconsistent with the San Diego Sheriff's Department's policies on the use of discipline." (ECF No. 64 at 19-20.) Plaintiff further contends that evidence of a retaliatory motive is sufficient to demonstrate that the actions in question did not reasonably advance a legitimate correctional goal.

Plaintiff "bears the burden of … proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). However, "prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right." *Bruce*, 351 F.3d at 1289; *see also Shepard v. Quillen*, 840 F.3d 686, 692 (9th Cir. 2016) ("[A] prison official who uses a valid procedure as subterfuge to obscure retaliation cannot assert that his action served a valid penological purpose, even though the prisoner may have arguably ended up where he belonged." (quotation and alterations omitted)).

In this case, Defendant's general justification for writing the rules violation report and transferring Plaintiff out of Facility 8—the maintenance of order in the prison—is not sufficient to defeat Plaintiff's claim at summary judgment in light of the evidence presented by Plaintiff and discussed above that Defendant was motivated by an intent to retaliate against Plaintiff for requesting an IA form. Further, while the Court affords prison officials "appropriate deference and flexibility," *Pratt*, 65 F.3d at 807 (quotation omitted), evidence that Defendant did not follow proper procedures in transferring Plaintiff and responded to Plaintiff's "minor" violations in a manner that was at least potentially inconsistent with his response to other incidents is sufficient to establish a genuine issue of fact as to whether all of the challenged conduct reasonably advanced the goal of maintaining order.

///

### 3. Qualified Immunity

Defendant contends that he is entitled to qualified immunity because "there is no case that clearly established that writing a [rules violation report] under these circumstances would violate Plaintiff's First Amendment rights." (ECF No. 62-1 at 11.) Plaintiff contends that it is clearly established "that correctional officers may not retaliate against a detainee for the detainee's attempt to use a grievance system." (ECF No. 64 at 21.)

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When presented with a qualified immunity defense, the central questions for the Court are: (1) whether the facts alleged, taken in the light most favorable to Plaintiff, demonstrate that the Defendants conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established" at the time it is alleged to have been violated. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Here, as set forth above, genuine disputes of material fact exist as to whether Defendant retaliated against Plaintiff in violation of his First Amendment rights. If Plaintiff's claims are presumed true, this evidence could establish that Defendant retaliated against him. *See Jeffers*, 267 F.3d at 907. Thus, "the next ... step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201.

A right is "clearly established" when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202. However, "the clearly established right must be defined with specificity." *City of Escondido v. Emmons,* 139 S. Ct. 500, 503 (2019). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

3:20-cv-02258-WQH-DEB

In 2003, well before the actions giving rise to Plaintiff's claim, the Court of Appeals for the Ninth Circuit held that "prison officials may not defeat a retaliation claim … simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right." *Bruce*, 351 F.3d at 1289. In 2016, the Court of Appeals in *Shepard* stated: "*Bruce* clearly established that prison officials may not abuse a valid procedure 'as a cover or a ruse to silence and punish' an inmate." 840 F.3d at 694 (quoting *Bruce*, 351 F.3d at 1289)). The Court finds that Plaintiff's right to be free from retaliation was "clearly established" at the time the events in this action occurred such that it was "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202. In viewing the facts in the light most favorable to Plaintiff, the Court finds Plaintiff has sufficiently produced evidence to satisfy both prongs of the qualified immunity analysis as to his retaliation claim against Defendant.

Defendant's Motion for Summary Judgment is denied.

## III.   MOTION TO STRIKE AND EVIDENTIARY OBJECTIONS

In his Motion to Strike, Plaintiff requests that the Court strike portions of the Declaration of Cesar Ceballos (ECF No. 62-4) on the basis that the Declaration contains improper expert testimony. Likewise, in his Reply to the Motion for Summary Judgment, Defendant objects to the deposition testimony of Stacy Sinner (ECF No. 64-1 at 99-102). The Court has reviewed the challenged testimony of both witnesses and finds that the challenged testimony would not materially affect the Court's analysis of Defendant's Motion for Summary Judgment. Because the Court does not rely on the challenged evidence in this Order, the Court denies the parties' respective requests without prejudice to the requests being raised at an appropriate time prior to trial.

## IV.   CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 62) is denied.

IT IS FURTHER ORDERED that the Motion to Strike (ECF No. 65) is denied without prejudice.

IT IS FURTHER ORDERED that the Court resets the following pre-trial deadlines: (1) counsel shall comply with the pre-trial disclosure requirements of Federal Rule of Civil Procedure 26(a)(3) by January 10, 2024; (2) counsel shall meet and take the action required by Local Rule 16.1(f)(4) by January 17, 2024; (3) Plaintiff's counsel shall provide opposing counsel with the proposed pretrial order by January 31, 2024; (4) the parties shall lodge the proposed pretrial order with this Court, including any objections to the parties' respective pretrial disclosures, by February 7, 2024; and (5) the final pretrial conference will be held before this Court on February 21, 2024, at 9:00 a.m. in Courtroom 14B. In meeting these deadlines, the parties shall otherwise adhere to the relevant instructions contained in the prior Scheduling Order (*see* ECF No. 45 ¶¶ 14–23).

Dated:  November 8, 2023

*William Q. Hayes*
Hon. William Q. Hayes
United States District Court